[No. 41563.    En Banc.    February 4, 1971.]

THE STATE OF WASHINGTON, *Petitioner*, v. ARNOLD MAXWELL HARRIS, *Respondent*, ROBERT D. McMULLEN, *Judge of the Superior Court for Clark County, Petitioner*.*

*Reported in 480 P.2d 484.

Robinson, Landerholm, Memovich, Lansverk, Whitesides & Marsh, Dale V. Whitesides, and Duane Lansverk, for petitioner (appointed counsel for appeal).

R. DeWitt Jones and C. Brent Nevin, for respondent.

NEILL, J.—Defendant Arnold Maxwell Harris is charged with first-degree murder for the killing of Mark Allen Harris, the son of his estranged wife, and assault upon his estranged wife, Laila Violet Harris. In a prior prosecution, a jury found this defendant not guilty of the murder of Ralph Burdick, the paramour of defendant's estranged wife. The three victims named in the prior and present charges were injured, two fatally, by the explosion of a bomb which had been mailed to Mr. Burdick.

The defendant moved to dismiss the present information asserting prior acquittal, double jeopardy and collateral estoppel. The trial court denied the motion.

The Court of Appeals granted defendant's petition for a writ of prohibition against the current prosecution, basing its action on collateral estoppel. State v. Harris, 2 Wn. App. 272, 469 P.2d 937 (1970). We granted the state's petition for review. The sole issue presented by the petition is whether the facts at bar support the defense of collateral estoppel in the current prosecution.

Recent decisions of the United States Supreme Court establish that the Fifth Amendment guarantee against double jeopardy includes collateral estoppel and is made applicable to the states through the Fourteenth Amendment. Ashe v. Swenson, 397 U.S. 436, 25 L. Ed. 2d 469, 90

S. Ct. 1189 (1970); *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). By virtue of these decisions, states are prevented, on a constitutional basis, from relitigating a question already decided in favor of the defendant at a prior trial.

Prior to these United States Supreme Court decisions, Washington was among those states which had recognized collateral estoppel as applicable in criminal cases. *State v. Dye,* 81 Wash. 388, 142 P. 873 (1914); *State v. Barton,* 5 Wn.2d 234, 105 P.2d 63 (1940); *State v. Peele,* 75 Wn.2d 28, 448 P.2d 923 (1968). In *State v. Peele,* we said, at page 30:

> It has been long established that the doctrines of res judicata and collateral estoppel do apply in criminal cases. See, Modern Status of Doctrine of Res Judicata in Criminal Cases, Annot., 9 A.L.R.3d 203 (1966). These doctrines, as applied to criminal cases, bar relitigation of issues actually determined by a former verdict and judgment. *Sealfon v. United States,* 332 U.S. 575, 98 L. Ed. 180, 68 Sup. Ct. 237 (1948); *United States v. Burch,* 294 F.2d 1 (5th Cir. 1961); *State v. Barton,* 5 Wn.2d 234, 105 P.2d 63 (1940). The application of collateral estoppel in a criminal action is a 2-step operation: the first is to determine what issues were raised and resolved by the former judgment, and the second is to determine whether the issues raised and resolved in the former prosecution are identical to those sought to be barred in the subsequent action.

The state points out that the killing of several persons in a single act or affray constitutes multiple crimes. *State v. Robinson,* 12 Wash. 491, 41 P. 884 (1895). *See State v. Taylor,* 185 Wash. 198, 52 P.2d 1252 (1936); *State v. Labbee,* 134 Wash. 55, 234 P. 1049 (1925). We agree with that concept, but observe that its applicability pertains to double jeopardy. *See State v. LaPorte,* 58 Wn.2d 816, 365 P.2d 24 (1961). Here, our concern is with the separate doctrine of collateral estoppel which is now included in the constitutional guarantee as noted above. In view of the pronouncement by the United States Supreme Court in *Ashe v. Swenson, supra,* we must further examine the scope and applicability of collateral estoppel in criminal cases.

The *Ashe* court observed that "the rule of collateral estop-

pel in criminal cases is not to be applied with the hyper-technical and archaic approach of a 19th century pleading book, but with reason and rationality." We may properly assume from this that, in a particular case, we should examine the entire record to ascertain whether the purpose of the constitutional protection is being thwarted, *i.e.*, is the defendant being harassed by multiple prosecutions or did the jury by the prior acquittal necessarily determine an ultimate fact which must be proved by the state in the current prosecution?

■ We see no harassment ipso facto in subsequent prosecutions where there are multiple victims of the same act or transaction, therefore, multiple offenses, and the jury in the prior case has acquitted the defendant of the charge of murdering one of the victims. Here, three separate and distinct crimes have been committed. This record is entirely devoid of any evidence or indication that the state deliberately chose to get "a dry run" by prosecuting its cases in this sequence.

At the trial for the murder of Mr. Burdick, the state sought to introduce into evidence, on the issues of intent and identity of the person who mailed the bomb, a type-written letter containing threats against the lives of Mr. Burdick and Mrs. Harris.[1] The "signature" on this letter was the typewritten name of a third party. Exemplars first used by an expert witness to form an opinion as to the

---

[1] This letter was addressed and delivered to Mrs. Harris and stated in part: "Starting the first of July, you send your children $200 a month support. Don't you ever be a day late or a dollar short or you both will die. . . . You and the convict have got to quit strangling your children, any man who [a 4-letter word] the mother of five children must also bear the responsibility of supporting those children. . . . If you and the convict are still alive you're going to pay half of it. . . . Convict is going to help support your children until the day he dies which may be very soon. . . . You are also trying to destroy him and if you manage, you will die. . . . Please remember when you walk into your death trap, you will be a long time dead. . . . If you ever take up with another no good s.o.b. you sure make him understand that he has become the corner of a rectangle, and he will accept five children, one of which is very expensive to support, or die if he fails."

authorship of the letter consisted of letters known to have been typed by defendant and mailed to the wife of defendant. The trial court ruled the exemplars to be privileged communications and would not permit their use by the expert witness. Subsequently, other exemplars were obtained by the state, but the witness, in an offer of proof, testified that, although he formed an opinion based on the later exemplars, he could not entirely disassociate the privileged exemplars from his mind in forming his opinion that the typewritten letter was written by the defendant. The court refused to admit the testimony of the expert.

In *Ashe*, the state candidly admitted that the first trial was merely a "dry run" for a second trial. Under such circumstances, the Supreme Court observed that it is this harassment which the constitution forbids. Here, there is no indication that the state was making a "trial run" by the first trial or that it acted in bad faith in electing to try the defendant for the killing of Mr. Burdick first and separately. The state made every effort to introduce the threat letter into evidence, but was barred by the court's ruling. Further, it was to the advantage of the defendant, and not the state, to separate the trials. Had defendant faced trial for the offense against each of the three victims at the first trial, the threat letter would have been admissible as to the counts for the death of the child and the assault and battery on Mrs. Harris. The jury could have been instructed to disregard this evidence as to the death of Mr. Burdick, but it must be obvious that the jury could hardly ignore the impact of the letter in its determination as to the identity of the malefactor, irrespective of the identity of the victim.[2] Thus, it appears to us that a "realistic and rational" application of collateral estoppel, coupled with the qualifying language limiting the holding of *Ashe* to "the circumstance of this case," does not support the conclusion that the state is guilty of harassment.

---

[2] The same rationale led the Supreme Court to prohibit joinder of defendants where evidence given by one, inadmissible as to the other defendant, prevented the latter from obtaining a fair trial. *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968).

So, in applying *Ashe* with reason and rationality, we look to the ultimate issue determined by the general verdict of not guilty of the charge that the defendant murdered Mr. Burdick. It appears that the jury must have determined that the defendant was not the person who mailed the bomb or caused it to be mailed, for to believe that the jury could have otherwise acquitted the defendant would stretch reason and credulity. Thus, at first blush, the reasonable conclusion would seem to be that there is an identity of ultimate issues and that collateral estoppel bars this prosecution. However, such a conclusion ignores an element in this case which we believe prevents the operation of collateral estoppel as a bar.

We consider the previously barred evidence—the typewritten letter—to be relevant and material to the issues of identity and intent. It is clearly admissible in the present proceeding involving charges wherein the wife and her son are the victims. RCW 5.60.060(1). Unlike the situation or admonitions in *Ashe v. Swenson, supra,* this additional evidence was not discovered later, held back by the state at either trial, or buttressed between trials. Is this difference material and a proper basis on which to distinguish *Ashe* and our prior cases on collateral estoppel? We believe it is.

■ Without the presence of harassment, constitutional collateral estoppel posits the familiar question of whether an ultimate fact which must be proved in the second case has already been fully litigated in the first trial.[3] There are two elements in this question: (1) identity of issues, and (2) completeness of the prior litigation.

Here, an examination of the instructions and evidence in the first trial render it beyond serious contention that, for all practical purposes, the sole contested issue was whether defendant mailed the bomb. That same issue would neces-

---

[3]It seems clear that the Supreme Court in *Ashe v. Swenson,* 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970), abandoned the earlier "same evidence" test of collateral estoppel, but did not adopt "the same transaction" test proposed by three of the justices. Rather, that court used the civil collateral estoppel doctrine as the test to be applied. *See United States v. Fusco,* 427 F.2d 361 (7th Cir. 1970); Schaefer, *Unresolved Issues in the Law of Double Jeopardy,* 58 Cal. L. Rev. 391 (1970).

sarily be present in a trial under this second information. Thus, the first of the above. stated elements is present.

However, the second element must also be present for collateral estoppel to apply. The law must regard the issue as one which has been fully contested in the first trial.

■ ·The logic of this requirement is found in the purpose of collateral estoppel, namely, the conclusiveness of litigation and the prevention of duplicitous and vexatious trials. The public policy supporting this concept properly prohibits the state from relitigating issues which were or could have been fully and completely contested in an earlier trial. But the same policy must recognize the right of society, as represented by the state, to have an opportunity to fully and completely place before the tribunal all facts relevant and material to the charge. This logic has been expressed by courts in terms of an exception to the applicability of res judicata or collateral estoppel if injustice will result. *See Beverly Beach Properties, Inc. v. Nelson,* 68 So. 2d 604, 41 A.L.R.2d 1071 (Florida, 1953); *In re Estate of Di Carlo,* 3 Cal. 2d 225, 44 P.2d 562, 99 A.L.R. 990 (1935). *See also* 9 Stanford L. Rev. 281 (1956-57).[4]

Were we to adopt defendant's contention that collateral estoppel or prior conviction bars this prosecution, we would

---

[4]Professor Currie, in an article entitled *"Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,"* states:

Over and over again it has been demonstrated that, in the use of this doctrine, courts must be alert to the danger that its extension by merely logical processes of manipulation may produce results which are abhorrent to the sense of justice and to orderly law administration.

(Footnote omitted.)

In the same article, Professor Currie, writing on the matter of mutuality, says:

The plea [collateral estoppel] should not be allowed simply because the party against whom it is asserted "has had his day in court"; he must have had in a realistic sense a full and fair ·opportunity to make his case.

(Footnote omitted.) 9 Stanford L. Rev. 281, at 289 and 315 (1956-57).

We see no distinction in principle between the application of this exception as to the element of mutuality and its application where a party has been barred from fully and completely litigating an issue at a prior trial.

be extending his privilege—rightfully asserted in the prior prosecution—to constitute a bar to prosecuting an offense in which such privilege is not applicable. Such a result would go beyond the purpose and logic of both the doctrine of collateral estoppel and of the privilege. The result would be a patent injustice to the victims and society.

■ We are of the opinion that, in cases where evidence is rejected for reasons that have no bearing on the quality of the evidence, the issue on which that evidence bears is not fully litigated. This is to be distinguished from evidence which is rejected on grounds of its irrelevancy, untrustworthiness, or cumulative nature. In such latter instances, the end determination on the particular issue is as fully litigated as proper administration of justice will allow. But there are other instances where, for some reason of policy, the law does *not* completely litigate an issue. We regard the policy which precludes otherwise relevant and competent evidence in certain instances on the grounds of privilege as such a situation. In such cases, collateral estoppel does not preclude subsequent litigation of the particular issue, since it has not been fully litigated in the first instance.

Here, otherwise relevant, trustworthy, and competent evidence of potentially vital weight was kept out of the first trial properly, but solely, on the ground of privilege. In that action, the policy of law forbade complete litigation of the issue of identity. Collateral estoppel does not preclude such complete litigation in a subsequent case.

Accordingly, under these circumstances, where joinder of all offenses in one trial would have at least disadvantaged the defendant and may have denied him a fair trial, where there is no indication of bad faith of the state in deliberately making a "trial run" in the first prosecution and where the issue involved was not fully litigated in the first proceeding, we do not believe that collateral estoppel bars a subsequent prosecution for an offense committed against a different victim by the same act.

The application for a writ of prohibition is denied and trial court is affirmed.

HAMILTON, C. J., FINLEY, ROSELLINI, and HUNTER, JJ., and HILL and DONWORTH, JJ. Pro Tem., concur.

HALE, J., concurs in the result.

March 24, 1971. Petition for rehearing denied.