584

[No. 32888-3-I. Division One. July 17, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHELE
WILLIAMS, *Appellant*.

*Andrew Subin*, for appellant.
*Edward Stemler* and *Seth Aaron Fine*, for respondent.

PEKELIS, J. Pro Tem.* — Michele E. Williams (Williams) appeals her conviction for welfare fraud — first-degree theft. Her principal contention is that the trial court erred when it refused to dismiss the charge after having concluded that the State was not collaterally estopped from pursuing a criminal action for welfare fraud even though, in an earlier state-brought administrative action to recoup public assistance overpayments to Williams, an administrative law judge (ALJ) had entered a specific finding that she had not intentionally received the overpayments. We reverse and dismiss the charge.

In approximately June 1985, Williams, who had two

---

*Justice Rosselle Pekelis participated in this case while a member of the Court of Appeals, but signed the opinion as a judge pro tempore pursuant to CAR 21(c).

children, moved into the home of William Wellen (Wellen), whom she had dated since 1984. Williams and Wellen also opened a joint checking account in 1985. At that time, Williams was receiving public assistance in the form of a monthly cash grant, food stamps, and medical benefits.

Wellen, a merchant seaman, was at sea from April 28 through August 11, 1985. When Wellen returned, he began verbally and physically abusing Williams, a pattern of conduct that continued throughout their relationship.

Wellen wanted Williams to continue receiving public assistance, but did not want her to disclose to the Department of Social and Health Services (DSHS) they were living together or his financial situation. Williams knew that she was legally required to report changes in the number of household members and all income and resources, including bank accounts. For approximately two years, however, she did not disclose that she was living with Wellen, and she never disclosed his income or their joint bank account. According to Williams, she and/or her children would have been subjected to "severe abuse", even death, had she disclosed this information.

In March 1991, after their relationship had ended, Wellen reported Williams to DSHS. On November 14, 1991, an administrative hearing was held to determine whether: (1) DSHS had determined correctly that Williams had received an overissuance of food stamps in the amount of $5,411; (2) such overissuance was the result of an inadvertent household error; (3) Williams must repay the overissuance of food stamps; (4) DSHS had determined correctly that Williams had received an overpayment of financial assistance in the amount of $12,634.86; (5) DSHS had determined correctly that Williams had received an overpayment of medical assistance in the amount of $7,459.52; and (6) Williams must repay the financial and medical assistance overpayments.

The ALJ determined that Williams had received an overissuance of food stamps. Although the State had conceded that the overissuance was due to "inadvertent

household error," the ALJ ruled that Williams nevertheless was not excused from repaying the amount of the overissuance.

The ALJ also determined that the State had overpaid financial and medical benefits to Williams and that she must repay those amounts. Former WAC 388-44-145(2), which provides for repayment via deductions from a recipient's current benefits, requires a 10 percent grant deduction for intentional overpayments, but allows for a 5 percent grant deduction for unintentional overpayments. Thus, in order to decide whether Williams was entitled to a lesser grant deduction, the ALJ was required to decide whether Williams had acted unintentionally. The ALJ concluded that the 5 percent grant reduction would apply to Williams because:

> None of the overpayments alleged are intentional overpayments because they were not the result of willful or knowing intent on the part of Appellant, former WAC 388-44-020 (Rev. 1086).

The State subsequently charged Williams with one count of welfare fraud — first-degree theft contrary to RCW 74.08.331 and RCW 9A.36.030.

Pretrial, Williams moved to dismiss, arguing that the State was collaterally estopped from prosecuting the welfare fraud charge because, in the administrative proceeding to recover the overpayments, the ALJ found that she had not intentionally received public assistance overpayments. The trial court denied the motion, reasoning:

> It's an interesting issue and probably a pretty close one, but I do find that the hearing that was held did not have to do with criminal charges and did not cover the same issues, but predominantly, the concern is public policy and I do not think that the intent and benefit for public policy would be to have the administrative hearing preclude the criminal action . . . .

Following a jury trial, Williams was convicted as charged and was sentenced within the standard range.

On appeal, Williams contends that the trial court erred

when it refused to dismiss the welfare fraud charge. It is Williams' position that the State is collaterally estopped from pursuing a criminal action for welfare fraud when, in an earlier state-brought administrative action to recover overpayments of public assistance made to her, the ALJ entered a specific finding that she had not intentionally received the overpayments.[1]

■ The doctrine of collateral estoppel, also known as issue preclusion, is embodied in the Fifth Amendment guaranty against double jeopardy and is applicable to state criminal cases via the Fourteenth Amendment. *See State v. Cabrera*, 73 Wn. App. 165, 169, 868 P.2d 179 (1994); *State v. Cleveland*, 58 Wn. App. 634, 638, 794 P.2d 546, *review denied*, 115 Wn.2d 1029 (1990), *and cert. denied*, 499 U.S. 948 (1991).

■■ Collateral estoppel prevents relitigation of an issue of ultimate fact raised in a subsequent cause of action or claim when: (1) the issue decided in the prior adjudication is identical to that presented in the action in question; (2) there is a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted was a party or privy in the prior litigation; and (4) the application of the doctrine does not work an injustice against the party to whom the doctrine is to be applied. *See, e.g., Estate of Sly v. Linville*, 75 Wn. App. 431, 434, 878 P.2d 1241 (1994); *Mc-Daniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987). The party asserting collateral estoppel bears the burden of proof. *McDaniels*, 108 Wn.2d at 303.

---

[1]We note that the converse situation existed in *Beckett v. Department of Social & Health Servs.*, 87 Wn.2d 184, 186-88, 550 P.2d 529 (1976), *overruled on other grounds, Matter of McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984). There, the welfare recipient previously had been acquitted of grand larceny. The court held that the State was not collaterally estopped from bringing an administrative action to recover the fraudulent overpayment of public assistance based on the same factual circumstances, reasoning that the identity of issues requirement had not been met because the burdens of proof differed in the two proceedings. In the administrative action, the standard of proof is "clear, cogent, and convincing" evidence, while in the criminal action it is "beyond a reasonable doubt." *Beckett*, 87 Wn.2d at 186-88. Here, however, the situation is reversed — if the State could not meet the lesser burden of proof in the administrative proceeding, it certainly would have been unable to meet the greater burden of proof in the criminal proceeding.

In this case, the first and fourth factors are in dispute. In terms of the identity of issues requirement, the primary issues decided at the administrative proceeding were: (1) whether DSHS had determined correctly that Williams had received an overissuance of food stamps and an overpayment of financial and medical assistance and, if so, (2) whether she should be required to repay those overpayments.

In deciding whether Williams was required to repay the full value of the food stamps overissued to her, the ALJ determined that the State's concession that the overissuance was due to an "inadvertent household error" nevertheless did not provide a basis for reducing the amount that Williams owed.[2] In deciding whether Williams was required to reimburse the State for the overpayment of financial and medical benefits, the ALJ was required to decide whether Williams had intentionally received such overpayments. An "intentional overpayment" is defined as an overpayment that occurs "when there is *willful* or knowing intent of the recipient to receive or retain an overpayment". (Emphasis added.) Former WAC 388-44-020(1). The ALJ determined "[n]one of the overpayments alleged are intentional overpayments because they were not the result of *willful* or knowing intent on the part of" Williams. (Emphasis added.) Accordingly, the ALJ reduced her current benefits by 5 percent as opposed to the mandatory 10 percent required by former WAC 388-44-145(2).

At the criminal prosecution for welfare fraud, the primary issue was whether Williams had acted *willfully* in obtaining public assistance to which she was not rightfully entitled. *See* RCW 74.08.331.[3] Thus, it is clear that both proceedings required resolution of whether Williams

---

[2]"Inadvertent household error overissuance" is defined, in relevant part, as any overissuance caused by a "[m]isunderstanding or unintended error by a household". WAC 388-49-020(42)(a).

[3]RCW 74.08.331 defines welfare fraud, in relevant part, as:

"Any person who by means of a willfully false statement, or representation, or impersonation, or a willful failure to reveal any material fact, condition or

had intentionally, i.e., *willfully*, received overpayments of public assistance and an overissuance of food stamps.

■ Nevertheless, the State contends that the issues in both proceedings are not identical because the ALJ determined that Williams had not intentionally received public assistance overpayments in the context of determining the method of repayment.[4] As support, the State relies on the rule that an issue is not identical where it "arises in two entirely different contexts". *McDaniels*, 108 Wn.2d at 305. Because the issue of whether Williams had *willfully* received public assistance overpayments was not a collateral issue and was squarely decided in the administrative action, we conclude that the context was not "entirely different". *Compare McDaniels*, 108 Wn.2d at 305-06.

The State also contends that this issue was not actually litigated in the administrative proceeding because the State conceded that the *food stamp* overissuance had been the result of "inadvertent household error". As support, the State cites *McDaniels*, 108 Wn.2d 299, and *Cabrera*, 73 Wn. App. 165, for the proposition that collateral estoppel

circumstances affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or willful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstance affecting the person's eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, . . . any public assistance to which the person is not entitled or greater public assistance than that to which he or she justly entitled shall be guilty of grand larceny. . .".

[4]To the extent that the State suggests that, as a matter of law, an issue previously decided in an administrative proceeding cannot collaterally estop a criminal prosecution of the same issue based on the same factual circumstances, we reject it. *See Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 508-10, 745 P.2d 858 (1987) (holding that when procedural differences exist between the administrative proceeding and the court proceeding, application of collateral estoppel is appropriate if: (1) the party received adequate notice; (2) the party had an opportunity to present evidence and make legal arguments; (3) there was a final adjudication on the record in the form of findings of fact and conclusions of law). *See also Lockwood v. Superior Court*, 160 Cal. App. 3d 667, 206 Cal. Rptr. 785, 787 (1984) (stating that "[c]ollateral estoppel may be invoked in a second action which is substantially different in nature from the first").

does not preclude litigation of issues that were uncontested in a prior proceeding.

In *McDaniels*, 108 Wn.2d 299, the court held that collateral estoppel did not bar a paternity action where paternity had been presumed in an earlier dissolution proceeding. In *Cabrera*, 73 Wn. App. 165, the court held that collateral estoppel did not bar the defendant from challenging his offender score calculation where the State had not shown that the defendant had objected to the use of the challenged convictions in prior sentencing proceedings.

The refusal to apply collateral estoppel in these cases was appropriate because the disputed issues in the former proceedings had not really been at issue in the latter proceedings. In sharp contrast, the State *affirmatively* stipulated to the material issue of whether the overissuance of food stamps to Williams had resulted from "inadvertent household error". Based upon the State's concession and evidence adduced at the hearing, it is abundantly clear that the issue of whether Williams had *intentionally* received public assistance overpayments was fully litigated and decided adversely to the State. *See Nelson v. Jones,* 787 P.2d 1031, 1036 (Alaska 1990).

Moreover, the State's concession as to *food stamps* overissuance is immaterial. The ALJ concluded that Williams had not intentionally received *financial and medical assistance overpayments*; the State did not concede that such overpayments were unintentional.

Having concluded that the identity of issues requirement has been met, we next consider whether the application of the collateral estoppel would work an injustice and violate public policy. In contending that application of collateral estoppel would violate public policy, the State cites *Cleveland*, 58 Wn. App. 634. There, the court held that the State was not collaterally estopped from charging the defendant with statutory rape and indecent liberties even though the trial court had found in an earlier dependency hearing that the State failed to meet its burden of proving

sexual abuse and dismissed the dependency petition. *Cleveland*, 58 Wn. App. at 637-44. In holding that the application of the doctrine would work an injustice, the *Cleveland* court reasoned:

> [W]e find overall considerations of public policy are determinative of the question before us. Dependency proceedings are often attended with a sense of urgency, are held as promptly as reasonably possible, and the entire focus of the proceeding is the welfare of the child. The focus being more narrow than in a typical felony trial, the State normally does not need, nor does it perform, the extensive preparation typically required for felony trials.

*Cleveland*, at 643-44. The court also found it significant that the State has more resources available to develop a felony prosecution than it has in a typical dependency proceeding and felony trials are decided by a jury, rather than by a judge as in dependency proceedings. *Cleveland*, 58 Wn. App. at 644. Finally, the court opined that the public policy considerations were implicated because the State may be reluctant to conduct dependency proceedings if the doctrine of collateral estoppel were applied to bar relitigation of the same issues in a criminal trial. *Cleveland*, 58 Wn. App. at 644.

*Cleveland*, however, is distinguishable because the primary public policy concern is not applicable here. In *Cleveland*, the court expressed concern that if collateral estoppel barred a criminal prosecution after a failed dependency proceeding arising from the same factual circumstances, the State would not risk bringing a dependency proceeding until the conclusion of the criminal prosecution. As a result, the State's compelling interest in expeditiously protecting the welfare of children would be compromised. We are not presented with a similar compelling interest in the welfare context of this case.[5]

Furthermore, not only do we perceive no public policy

---

[5]The other considerations mentioned by the *Cleveland* court, i.e., that the State has more resources available to develop a felony prosecution than in a typical dependency proceeding and that felony trials are decided by a jury while dependency proceedings are decided by judges, do not appear to be relevant to the question of whether application of the doctrine would work an injustice.

reason for not applying the doctrine in this context, but it is our perception that public policy would be better served if the State were estopped from prosecuting a welfare fraud charge where the recipient has previously been adjudged not to have intentionally received public assistance overpayments. Specifically, by preventing relitigation of an issue already litigated, judicial economy, the policy upon which the doctrine of collateral estoppel is based, would be served. In addition, the integrity of judicial system would be fostered by avoiding the possibility of inconsistent judgments. Finally, concerns of fairness and of protecting welfare recipients, who by definition can ill-afford the costs of repeated litigation, would be served by applying collateral estoppel.

In sum, we conclude that the trial court erred in refusing to dismiss the charge based upon the application of collateral estoppel. Accordingly, we reverse and dismiss the charge.[6]

KENNEDY, A.C.J., and BECKER, J., concur.

Review granted at 128 Wn.2d 1007 (1996).

---

[6]Having reversed Williams' conviction based on collateral estoppel, we do not address Williams' additional contentions that the trial court erred in refusing to give her proposed duress instruction and in refusing to allow her to present evidence that she was already obligated to repay the public assistance overpayments.