IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40384-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RAFAEL ROMERO, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — A jury convicted Rafael Romero of attempting to elude a police

vehicle. Romero asserts two assignments of error: (1) prosecutorial misconduct that resulted

in improper burden shifting and (2) abuse of discretion by the trial court in denying a motion

for mistrial that was based on the misconduct allegation.

Finding no error, we affirm.

FACTS

*Background*

Sergeant Jason Ball of the Grant County Sheriff's Office was "running a radar" in a

marked patrol car when a car went past him "at a high rate of speed" in the wrong lane of

travel. Rep. of Proc. (RP) (Mar. 27, 2024) at 172. Ball attempted to pull the car over but, after briefly slowing, the driver accelerated away. Ball and another deputy unsuccessfully attempted several techniques to stop the car, including "stop sticks" and two separate "pursuit immobilization techniques" (PIT maneuvers). RP (Mar. 27, 2024) at 177-78. Ball was able to push the car into a ditch during the second PIT maneuver, but the driver accelerated out of the ditch and continued onward. Ball never lost sight of the car and observed one person inside the car wearing a black hooded sweatshirt.

The car finally entered an orchard where it could go no further. By the time Ball reached the car, the driver was fleeing on foot. Multiple officers, including a K-9 unit, joined the search for the driver. While other officers searched for the driver, a check of the license plate showed the car was registered to Rafael Romero.

After about 45 minutes, Romero was found in a pump house approximately 100 yards from the abandoned car. Romero was wearing dark blue pants, a dark blue hoodie with the hood up, and a black jacket. Romero was arrested and placed in Deputy Hector Ledezma's car. During the drive to the jail, Romero stated, "I don't understand why y'all ram my car. That was some goofy-ass shit. I wasn't even going that fast." RP (Mar. 27, 2024) at 215.

Romero was charged with one count of attempting to elude a police vehicle. Romero exercised his right to a jury trial.

*Trial*

At trial, the State called three witnesses: (1) Sergeant Jason Ball (2) Officer Nicholas

Stewart, the K-9 handler, and (3) Deputy Hector Ledezma. The witnesses testified to the

above events.

During cross-examination, Ball and Ledezma acknowledged they wore body cameras

that had recorded the events. Given defense counsel's focus on the body camera footage

during cross-examination, the prosecutor told the court she could arrange to "play the

bodycam if that's what counsel is asking for," RP (Mar. 27, 2024) at 215, but ultimately no

body camera footage was presented or entered into evidence by the prosecution or by the

defense.

*Closing argument*

During closing argument, Romero's counsel remained focused on the body camera

footage. He argued that the lack of footage constituted a lack of evidence that should create

a reasonable doubt as to Romero's guilt:

> The defendant doesn't have to put on any evidence. . . .
>         But let me ask you this. Where is the bodycam? Where is the bodycam
> that Officer Ball had of this? Why isn't it here? . . . Where is Officer
> Ledezma's bodycam? That's not here either.
> [O]ne of the instructions that you have is . . . based upon the evidence or lack
> of evidence. . . .
>         But let it not eliminate questions you may have about this case. And I
> say the bodycam . . . We don't control that as the defense. You don't control
> that. The state controls that. . . .
>         So, when they talk about evidence, it's also about the lack of evidence.

3

RP (Mar. 28, 2024) at 258-59.

In rebuttal, the prosecutor responded to defense counsel's statements:

. . . [B]odycams are both a blessing and a curse. They end up, you have to watch a lot of bodycam. *And if there had been a discrepancy, I think we might have heard about that.* But before we had bodycams, we had officers who took the stand and told juries and told the Court what they had seen, what they had observed, what they had done. And that's what you heard here.

RP (Mar. 28, 2024) at 262 (emphasis added).

Once the jury began deliberations, Romero's counsel moved for a mistrial, arguing that the prosecutor's statement in rebuttal shifted the burden of proof when she noted that "if there had been a discrepancy, I think we might have heard about that." RP (Mar. 28, 2024) at 262. Counsel argued that only the defense would have raised any discrepancies between the officers' testimonies and the body camera footage and, therefore, this was an improper shift of the burden of proof. The trial court issued an oral ruling denying Romero's motion for mistrial, stating:

[I]n rebuttal . . . the state is allowed to address arguments regarding evidence or lack of evidence made by the defense and to address it, where the jury has a chance to consider it. . . .
I don't necessarily feel this was a burden shift. They just, instead, explained what the state had proved.

RP (Mar. 28, 2024) at 264-65.

The jury found Romero guilty of attempting to elude a police vehicle. Romero appeals.

ANALYSIS

*Closing argument*

Romero argues: (1) the prosecutor committed misconduct by improperly shifting the burden of proof during closing argument, and (2) the trial court erred by denying his motion for mistrial that was based on the misconduct allegation. The State responds that the prosecutor's comment did not constitute misconduct and, alternatively, there is no substantial likelihood that the prosecutor's comment affected the jury's verdict. We agree with the State.

"'Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard.'" *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014) (quoting *State v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)). "The Sixth Amendment to the United States Constitution guarantees a defendant a fair trial but not a trial free from error." *State v. Fisher*, 165 Wn.2d 727, 746-47, 202 P.3d 937 (2009). "Prosecutorial misconduct may deprive the defendant of [their right to] a fair trial." *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). When alleging prosecutorial misconduct, the defendant bears the burden of proving that (1) the prosecution's conduct was improper, and (2) the misconduct caused prejudice. *Fisher*, 165 Wn.2d at 747. We review the challenged conduct "in the context of the whole argument, the issues of the case, the evidence addressed in

5

argument, and the instructions given to the jury." *State v. Scherf*, 192 Wn.2d 350, 394, 429 P.3d 776 (2018).

"The hurdles to obtaining relief based on prosecutorial misconduct are purposefully high." *In re Pers. Restraint of Richmond*, 16 Wn. App. 2d 751, 754, 482 P.3d 971 (2021). "Not every prosecutorial misstep merits remand." *Id.* "Deference is instead owed to the trial court's ability to oversee the administration of justice, defense counsel's judgment about whether an objection was worth raising, and a jury's ability to independently assess the merits of the case." *Id.*

Romero must first show that the prosecutor's statements were improper. *Fisher*, 165 Wn.2d at 747. Romero argues the prosecutor improperly shifted the burden of proof when they stated, "And if there had been a discrepancy, I think we might have heard about that," regarding the body camera footage. RP (Mar. 28, 2024) at 262. Romero contends this statement suggested that he had a burden to present favorable evidence, given that the only party likely to raise such discrepancies would be the defense.

In closing argument, "a prosecutor has wide latitude to draw and express reasonable inferences from the evidence." *State v. Mak*, 105 Wn.2d 692, 698, 718 P.2d 407 (1986). Particularly, a prosecutor can "fairly respond to defense counsel's argument." *State v. Thorgerson*, 172 Wn.2d 438, 449, 258 P.3d 43 (2011). However, "it is improper for the prosecutor to argue that the burden of proof rests with the defendant." *Id.* at 453. A

prosecutor "generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence." *Id.*

Romero relies on this court's decision in *State v. Cleveland*, in which the prosecutor argued the following in rebuttal closing argument:

> Mr. Cleveland was given a chance to present any and all evidence that he felt would help you decide. *He has a good defense attorney, and you can bet your bottom dollar that Mr. Jones would not have overlooked any opportunity to present admissible, helpful evidence to you.*

58 Wn. App. 634, 647, 794 P.2d 546 (1990) (emphasis added). The *Cleveland* court held the prosecutor's statement to be improper because the argument (1) was not "strictly limited to a comment on the State's own evidence," and (2) "clearly suggest[ed] that there [was] no favorable evidence because Cleveland did not present favorable evidence," thus inferring Cleveland had a duty to present favorable evidence. *Id*. at 648.

Although Romero correctly notes similarities between the closing argument in this case and in *Cleveland*, the precise language and the context are distinguishable. In *Cleveland*, the prosecutor used language expressly referring to the defendant's counsel and told the jury that defense counsel would not have failed to present helpful evidence. *Id*. at 647. In this case, the prosecutor made no reference to Romero or his counsel, instead confining the comment to the evidence itself. Given the context, we do not find the prosecutor's argument to be misconduct.

The prosecutor's comment is best understood as a response to defense counsel's closing argument. In *Cleveland*, the prosecutor was not responding to arguments raised by the defense, and the improper statements had "virtually no persuasive quality in the context of the facts." *Id*. at 648. In this case, defense counsel argued during closing that the State had sole control of the body camera footage yet failed to present that footage and asked the jury to consider this to be a "lack of evidence." RP (Mar. 28, 2024) at 259. The prosecutor refuted the claim that the State had sole control of the footage and reminded the jury that three officers gave testimony on the events. Because the State has latitude to fairly respond to defense counsel's argument, the prosecutor's comment was not improper. *See Thorgerson*, 172 Wn.2d at 449.

Because we hold the prosecutor's comments did not improperly shift the burden, our inquiry into prosecutorial misconduct ends. However, because Romero raises the argument that the prosecutor's statements were substantially likely to affect the jury's verdict, we also address the issue of prejudice.

As noted above, "the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). This court examines three factors when considering a trial irregularity and how that may have impacted the outcome: "'(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court

8

properly instructed the jury to disregard it.'" *Id*. at 765 (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

While Romero asserts the prosecutor's comment was a serious error, we do not see this as serious in light of the context in which the statement was made. Romero's argument on appeal is that the inference in the prosecutor's statement is serious because it undermined his sole defense: the lack of evidence against him. However, as noted in *Thorgerson* and *State v. Russell*, the State has great latitude to respond to the defense's arguments. *Thorgerson*, 172 Wn.2d at 449-50; *Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). Where, as here, the State is directly responding to the defense's theory, the comment is more proper than improper.

The prosecutor during rebuttal closing argument focused on defense counsel's contentions during closing that (1) body camera footage was necessary to convict Romero and (2) that the State had sole control of the footage. Given that neither of these assertions reflect a complete picture, it was appropriate for the prosecutor to address these contentions. In addition, the comment by the prosecutor was short and couched within otherwise unobjectionable closing statements that were contextually aimed at pointing out to the jury all of the evidence that had been properly presented, which included the observations of the officers, the car being registered to Romero, and Romero's admission to being the driver, among other facts.

The second factor in review of prejudice is whether the statement involved cumulative evidence. In this case, the body camera footage would have been cumulative to the testimony of the officers, who stated their personal observations of the car chase and search for Romero. Romero asserts that the relevant issue is the prosecutor's inference that no discrepancies existed between the testimony and the body camera footage and how that inference impacted the jurors. But the emphasis should be on the body camera footage being cumulative to the admitted testimony.

Finally, we assess whether an instruction by the court directing the jury to disregard the statement offered a cure. Here, the trial court did not give a curative instruction because (1) the trial court determined the prosecutor's comment did not constitute misconduct, and (2) no curative instruction was requested by Romero. The court did, however, instruct the jury that the State had the "burden of proving each element of the crime beyond a reasonable doubt," and the defendant "has no burden of proving that a reasonable doubt exists." RP (Mar. 28, 2024) at 244. Jurors are presumed to follow instructions. *Emery*, 174 Wn.2d at 766. Therefore, we agree that no curative instruction was required.

Even if we were to assume that the prosecutor's comment was improper, it was not likely to affect the jury's verdict given all of the other evidence presented. Romero has not shown prejudice.

No. 40384-0-III
*State v. Romero*

*Motion for mistrial*

We review a trial court's denial of a motion for mistrial for abuse of discretion and find abuse only "'when no reasonable judge would have reached the same conclusion.'" *Emery*, 174 Wn.2d at 765 (internal quotation marks omitted) (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711 (1989)).

Romero argues that the trial court erred when it denied his motion for mistrial. Because we have determined that the prosecutor's comment during closing argument was not improper, the trial court did not abuse its discretion in denying Romero's motion for mistrial.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Cooney, A.C.J.

_____
Lawrence-Berrey, J.

11