[No. 71681-1. En Banc.]
Argued May 23, 2002. Decided January 9, 2003.

THE STATE OF WASHINGTON, *Respondent*, v. FONOTAGA TILI, *Petitioner*.

*Linda J. King*, for petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

IRELAND, J. — Fonotaga Tili challenges the imposition of an exceptional sentence for three counts of first degree rape, one count of first degree burglary, and one count of second degree assault. Holding that the offender scores were necessarily calculated correctly, that collateral estoppel does not bar the imposition of the exceptional sentence at the resentencing, and that the trial court did not abuse its discretion on resentencing, we affirm the imposition of an exceptional sentence.

## FACTS

On September 16, 1997, the victim, L.M., worked a double shift. As was her custom, L.M. left her purse at home because there was no place to safely store it at work. L.M.'s purse was later found in the apartment where the defendant, Fonotaga Tili, was staying, which provided circumstantial evidence that Tili broke into L.M.'s apartment and stole her purse at some point while L.M. was at work.

At around 11:15 P.M., on September 16, L.M. returned from work and ran a bath. Once in the bath, L.M. heard what sounded like someone entering her apartment. Frightened, L.M. got out of the bathtub and locked the bathroom door. After about four minutes, she decided to look outside the bathroom. Before leaving the bathroom, L.M. dialed "9" and "1" on her cordless phone, without dialing the last "1" necessary to complete the 911 call.

When L.M. entered the kitchen, she saw Tili as he leaped from his hiding spot. He wore only underwear and was holding a heavy metal pan. Tili violently and repeatedly struck L.M. in the head with the pan until she collapsed on the floor. As Tili began the attack, L.M. was able to dial the last "1" to complete the 911 call. The sounds of the ensuing

physical and sexual assault, lasting about two minutes, were caught on the 911 system.

When L.M. collapsed to the floor after numerous blows to the head with the metal pan, she begged Tili to stop and told him to take anything he wanted. Ignoring her, Tili told L.M. to "shut up" and said he was going to kill her.

Tili moved L.M. out from under the kitchen table and told her to lie on her stomach and keep her face on the floor. Tili raised L.M.'s hips and lifted her robe, exposing her nude body. He then licked her anus and proceeded to penetrate L.M.'s anus with his finger. He also used his finger to penetrate her vagina. Both of these penetrations were made separately and not at the same time. Tili demanded that L.M. say she "liked it," and she complied. Tili then attempted to penetrate L.M.'s anus with his penis, but stopped, and instead inserted his penis into her vagina. He told L.M. he had a knife.

At this time in the assault, two police officers knocked on L.M.'s door. Tili told L.M. to stay quiet or he would kill her. Upon the police officers' second knock, they announced themselves and L.M. screamed. Tili then delivered multiple blows with his fist to L.M.'s head before fleeing as the officers kicked the door open. The officers were able to glimpse Tili before he escaped through the bedroom window. Using a police dog, the officers found Tili, still in his underwear, hiding under a truck in the parking lot outside L.M.'s apartment. L.M. was able to identify Tili as her attacker at trial. She had seen him in the apartment complex a few days earlier and was acquainted with him from high school, although they were not friends.

## PROCEDURAL HISTORY

Tili was charged with one count of first degree rape for each independent penetration of the same or different orifice. He was also charged with one count of first degree burglary and one count of second degree assault.

He was convicted on all counts and was sentenced to 417 months with the three counts of rape to run consecutively. The burglary and assault sentences were to run concurrently with each other and the three rape convictions. At sentencing, the trial court stated that it did not believe that an exceptional sentence would be sustained on appeal if the rapes were considered separate and distinct conduct, as the trial court had considered them. However, the court went on to indicate that, should the multiple rapes be considered same criminal conduct on appeal, the same sentence would be imposed, as an exceptional sentence upward, justified by deliberate cruelty and vulnerability of the victim.

Tili appealed to this court, contending, among other things, that the trial court erred in imposing consecutive terms for his three first degree rape convictions. This court upheld his convictions, but remanded for resentencing. This court held that the assault merged with the rapes but not the burglary, and that the three rapes constituted same criminal conduct for sentencing purposes. *State v. Tili*, 139 Wn.2d 107, 985 P.2d 365 (1999) (*Tili* I).

At resentencing, the trial court maintained Tili's 417-month sentence as an exceptional sentence based on deliberate cruelty, vulnerability of the victim, and the multiple penetrations. The sentences for all counts were to run concurrently.

## ANALYSIS

Issues

Did the trial court miscalculate the offender scores, leading to incorrect presumptive sentencing ranges?

Where the court declined to impose an exceptional sentence at the original sentencing, is the court collaterally estopped from imposing an exceptional sentence on remand?

Was an exceptional sentence justified due to deliberate cruelty, multiple incidents per victim, and the operation of the multiple offense policy?

Standard of Review

■ We review a sentencing court's calculation of an offender score de novo. *State v. McCraw*, 127 Wn.2d 281, 289, 898 P.2d 838 (1995).

■ In order to reverse an exceptional sentence, the reviewing court must find (a) that the reasons relied upon by the sentencing judge when imposing the sentence are not supported by the record or do not justify the exceptional sentence, or (b) that the sentence imposed was clearly excessive or clearly too lenient. Former RCW 9.94A.210(4) (1989). Under (a), the court reviews the reasons under a clearly erroneous standard; the court reviews justification as a matter of law. Under (b), the court reviews a clearly excessive or clearly too lenient determination using an abuse of discretion standard. *State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990) (citing *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986)).

Calculation of Offender Score

■ A correct offender score must be calculated before a presumptive or exceptional sentence is imposed. Ordinarily, imposition of an exceptional sentence requires a correct determination of the standard range. *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). Remand is necessary when the offender score has been miscalculated unless the record makes clear that the trial court would impose the same sentence. *Id.* at 189.

Tili contends that this court must remand for resentencing because the trial court incorrectly calculated his offender score before imposing the exceptional sentence. He asserts a two-part error on this matter. First, he points out that the offender scores and presumptive ranges reported in the judgment and sentence are inconsistent with those reported in the findings of fact. Second, he asserts that the trial court gave an oral miscalculation of Tili's offender score for his burglary conviction.

Tili had no prior criminal history that would have counted toward his offender score. The correct sentencing

data based upon this court's ruling in *Tili* I is calculated as follows:

| Count | Offense | Level | Offender Score | Standard range (mos.) |
|---|---|---|---|---|
| Count I | Rape 1 | XII | 2 (Burglary 1) | 111-147 |
| Count II | Rape 1 | XII | 2 (Burglary 1) | 111-147 |
| Count III | Rape 1 | XII | 2 (Burglary 1) | 111-147 |
| Count IV | Burglary 1 | VII | 4 (Rape 1/Assault 2) | 36-48 |
| Count V | Assault 2 | IV | 2 (Burglary 1) | 12+ - 14 |

Under *Tili* I, all offenses are to be served concurrently, resulting in confinement under a standard range totaling between 111-147 months. The findings of fact omit the offender scores for each count but report the standard ranges correctly, as they appear in this chart.

Tili correctly points out that the judgment and sentence reflects incorrect offender scores and that the presumptive ranges in the judgment and sentence are inconsistent with those in the findings of fact. However, we hold that the inaccurate figures in the judgment and sentence are without effect, making remand for recalculation of Tili's offender scores unnecessary. Paragraph 2.3 in the judgment and sentence sets forth the sentencing data. The defendant is correct in his contention that the offender scores are incorrectly reported in that paragraph, resulting in an erroneous standard range calculation.

However, Tili's argument disregards several factors that are clear in the record. First, the correct standard sentence calculation is reflected in the findings of fact and conclusions of law for exceptional sentence, which was incorporated into the judgment and sentence by reference. Had the trial court relied on the erroneous offender scores of the judgment and sentence when it calculated the presumptive ranges for the findings of fact, it would have arrived at incorrect ranges. Yet, the presumptive ranges reported in the findings of fact are, in fact, correct. Second, in *Tili* I we gave a clear instruction as to how the trial court was to calculate Tili's offender scores. Thus, we are certain that

the trial court calculated the correct offender scores because it arrived at the correct presumptive sentences reported in the findings of fact.

■ Tili also contends that at resentencing, the trial court orally stated an incorrect presumptive sentence for Tili's burglary charge (102 months). A trial court has the power to enter a judgment that differs from its oral ruling, but once written judgment has been entered, it cannot enter an amended judgment after rethinking the case, unless the amended judgment is supported by the record. *Presidential Estates Apartment Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996). *See also State v. Eppens*, 30 Wn. App. 119, 126, 633 P.2d 92 (1981) (an appellate court may consider a trial court's oral decision in interpreting its written findings of facts and conclusions of law, "so long as there is no inconsistency"). Here, the incorrect oral ruling at trial was subsequently corrected by the final written findings, conclusions and judgment signed in open court. Having already determined that the trial court ultimately arrived at the correct presumptive sentences for each count in the findings of fact, its erroneous oral ruling is of no consequence.

In sum, neither "error" Tili challenges necessitates a second resentencing.

Collateral Estoppel

■ The doctrine of collateral estoppel is embodied in the fifth amendment to the United States Constitution guaranty against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Collateral estoppel (or issue preclusion) "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. This court has long recognized that collateral estoppel applies in criminal cases. *State v. Peele*, 75 Wn.2d 28, 30, 448 P.2d 923 (1968). Washington courts

have adopted the perspective of federal decisions that collateral estoppel in criminal cases is not to be applied with a hypertechnical approach but with realism and rationality. *Ashe*, 397 U.S. at 444, *cited with approval in State v. Harris*, 78 Wn.2d 894, 896-97, 480 P.2d 484, *rev'd on other grounds*, 404 U.S. 55, 92 S. Ct. 183, 30 L. Ed. 2d 212 (1971). *See also State v. Kassahun*, 78 Wn. App. 938, 948-49, 900 P.2d 1109 (1995).

■ Before collateral estoppel is applied, affirmative answers must be given to each of the following questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea of collateral estoppel is asserted a party or in privity with the party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied? *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983).[1]

Tili points out that, at the first sentencing, the trial court decided not to impose an exceptional sentence. He contends that the trial court is collaterally estopped from imposing the exceptional sentence at the resentencing because he believes that issue was already considered and rejected with finality at the first sentencing. Specifically, Tili refers to the trial court's refusal to impose an exceptional sentence when it originally sentenced him as though each of his crimes was separate and distinct criminal conduct. Thus, Tili perceives that the first prong of the collateral estoppel test has been met. However, because his argument overly simplifies the context of his case, we disagree that there is an identity of the issues between the first and second sentencing hearings.

---

[1] Contrary to the dissent's assertion, dissent at 377 n.6, this four-part analysis has been applied in several criminal cases, both by this court and the Court of Appeals. *See State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997); *State v. Bryant*, 146 Wn.2d 90, 98-99, 42 P.3d 1278 (2002); *State v. Cleveland*, 58 Wn. App. 634, 639, 794 P.2d 546 (1990); *State v. Corona Vasquez*, 109 Wn. App. 310, 314-15, 34 P.3d 1255 (2001).

 The procedural history of this case presents us with two sentencing contexts to consider. The first is the presumptive sentence resulting from a determination that the conduct was separate and distinct. The second context is the presumptive sentence arising from a determination that a defendant's conduct constitutes same criminal conduct. In Tili's case, the presumptive sentence vastly differs depending on which context the court was considering at the time of sentencing.[2] At the original sentencing, the trial court decided Tili's three counts of first degree rape would be counted as separate and distinct for sentencing purposes pursuant to former RCW 9.94A.400(1)(b) (1996). Sentencing seriously violent offenses, of which first degree rape is one, as separate and distinct conduct results in consecutive sentences for those offenses. Sentencing the same offenses as same criminal conduct results in concurrent sentences. Thus, sentencing Tili's rape counts under a separate and distinct format results in a longer overall sentence than if he were sentenced as though the rape counts were the same criminal conduct, simply because the former results in consecutive terms and the latter results in concurrent terms.

The trial court, having decided that it would sentence Tili as though the rape counts were separate and distinct, considered and rejected imposing an exceptional sentence on top of the presumptive sentence, which the judge considered to be fair by reason of the consecutive sentencing that occurs in the separate and distinct context. When we determined that Tili's rape counts were to be sentenced as same criminal conduct in *Tili* I, and we remanded for resentencing in accordance with that determination, the trial court was faced with a different sentencing context. At that point, the sentences for each rape count were to be

---

[2] As same criminal conduct, the presumptive range of 111-147 months for the three first degree rape counts is served concurrently. Thus, Tili serves only 111-147 months for all three counts of rape. As separate and distinct conduct, Tili serves three consecutive 111-147 sentences for the rapes. Thus, he would serve from 333-441 months for the three rape counts rather than just 111-147 months, a significant difference.

served concurrently. This results in a sentence for the rape counts that is significantly reduced compared to that which resulted at the first sentencing and one that the trial judge perceived to be too lenient.[3] Thus, the issue at the resentencing was fundamentally different. At the first sentencing, the trial court considered and declined to impose an exceptional sentence on top of the presumptive sentence resulting from separate and distinct conduct and consecutive sentences. Upon resentencing, the trial court was deciding whether to impose an exceptional sentence on top of the presumptive sentence resulting from same criminal conduct. For this reason, we answer the first question of the collateral estoppel analysis in the negative. There being no identity of the issues, the trial court was not collaterally estopped from imposing an exceptional sentence at the resentencing.

Tili relies entirely on *Collicott* to support his collateral estoppel argument and contends that both the facts of *Collicott* and this court's decision in that case compel the same result here. *State v. Collicott*, 118 Wn.2d 649, 827 P.2d 263 (1992) (*Collicott* II). *See also State v. Collicott*, 112 Wn.2d 399, 771 P.2d 1137 (1989) (*Collicott* I). In broad terms, Tili states that we held in *Collicott* II that "a trial court which considers and rejects the State's request for an exceptional sentence is collaterally estopped from imposing an exceptional sentence on remand for resentencing, based on the same facts considered at the first sentencing." Pet. for Review at 6 (citing *Collicott* II, 118 Wn.2d at 661-62).

■ Preliminarily, that "holding" of *Collicott* II is questionable because it did not command a majority on the collateral estoppel issue. In fact, in her concurrence, in which four other justices joined, Justice Durham agreed with the outcome of the case but specifically disagreed with the discussion of collateral estoppel as going beyond what was necessary to decide the case. *Collicott* II, 118 Wn.2d at 670. Thus, the discussion of collateral estoppel in *Collicott*

---

[3] The operation of the multiple offense policy as grounds for an exceptional sentence in this case is discussed later in this opinion.

II is not mandatory authority regarding the use of collateral estoppel in exceptional sentencing and may be considered dicta. Tili's reliance on *Collicott* II simply warrants an analysis of the facts of that case. By this opinion we do not overrule *Collicott* II as we find it to be distinguishable on the facts.

In *Collicott* II, this court reviewed the resentencing of a defendant convicted of one count each of burglary, rape, and kidnapping, all in the first degree, where the defendant contended that the imposition of an exceptional sentence at the resentencing was barred by collateral estoppel. *Collicott* II, 118 Wn.2d at 650, 653. Initially, the trial court determined that the three convictions arose out of the same criminal conduct, calculated the offender score, and sentenced Collicott accordingly. *Collicott* I, 112 Wn.2d at 402. At that time, the trial court declined to impose an exceptional sentence. *Collicott* II, 118 Wn.2d at 653. On the first appeal to this court, we affirmed the trial court's determination that Collicott's actions constituted same criminal conduct, but remanded for recalculation of his offender score. *Collicott* I, 112 Wn.2d at 412. At the resentencing, the court was alerted to an additional burglary conviction to which Collicott had delayed pleading guilty until after the original sentencing. The prosecutor advised that this new burglary conviction should be included in the recalculation of Collicott's offender score. *Collicott* II, 118 Wn.2d at 653. It was at this resentencing that the trial court decided to impose an exceptional sentence. *Collicott* II, 118 Wn.2d at 653-54. For purposes of a collateral estoppel analysis, there was an identity of the issues between Collicott's first and second sentencing. Where the trial court decided Collicott's conduct was same criminal conduct but declined to impose an exceptional sentence at the first sentencing, it made the opposite decision at the resentencing, while the "same criminal conduct" determination remained the same. Thus, the context, in terms of same criminal conduct or separate and distinct conduct, had not changed as between the first and second sentencing hearings.

As discussed above, unlike *Collicott*, the trial court in Tili's case faced a different issue at the resentencing than was before it at the original sentencing. The issue at resentencing was whether to impose an exceptional sentence on top of a presumptive sentence arising out of same criminal conduct, while at the original sentencing the court evaluated whether to impose an exceptional sentence on top of a presumptive sentence range to be served consecutively arising out of separate and distinct conduct. On this basis, we find *Collicott* distinguishable such that we need not extend its application to the case at bar. In any event, there is language in *Collicott* II indicating this court's permission to impose an exceptional sentence at resentencing if the trial court relied on the "clearly too lenient" standard of the multiple offense policy as the basis for the exceptional sentence. Accordingly, the court stated that it would allow the trial court to "choose again to consider whether the presumptive sentence is 'clearly too lenient' " after recalculating the offender score. *Collicott* II, 118 Wn.2d at 660.

Tili next argues that the trial court exceeded the mandate this court issued in *Tili* I as he perceives the trial court was instructed only to recalculate Tili's offender score consistent with the opinion. Again, Tili seizes upon *Collicott* to support his argument. In reality, the deciding issue in *Collicott* II was whether a trial court has "the authority to impose an exceptional sentence upon remand from the Supreme Court when the case was remanded with an order directing the trial court to 'redetermine the petitioner's offender score', and the trial court had originally imposed a standard range sentence." *Id.* at 652. Besides its discussion of collateral estoppel, the opinion concluded that the trial court exceeded the scope of the mandate emanating from *Collicott* I by imposing the exceptional sentence at the resentencing. *Id.* at 661, 663.

In contrast, the mandate from *Tili* I requires "further proceedings in accordance with the attached true copy of the opinion." Clerk's Papers at 147. In the "true copy of the opinion," after determining that Tili's three rape con-

victions were to be considered "same criminal conduct" for sentencing purposes, we held that "[his] sentence . . . [was] statutorily required to be served concurrently *unless an exceptional sentence* [*was*] *imposed.*" *Tili* I, 139 Wn.2d at 110 (emphasis added). Tili asserts that, because this language appears at the beginning of the opinion, it should be considered general commentary about the statutory requirements of former RCW 9.94A.400(1)(a) (1998) and is merely dicta. He claims the true instruction from this court is contained only in the "conclusion" of the opinion, which explains the correct calculus to be used for his offender score and, therefore, the trial court exceeded the scope of the mandate by imposing an exceptional sentence. This disputed language does appear at the beginning of the opinion in *Tili* I. However, it is part of a summary of the holdings of this court. As quoted above, this court's holding regarding its determination of "same criminal conduct" appears in the sentence just before the one Tili now challenges. It is not persuasive to argue that by their spatial placement in the opinion alone, certain words, but not others, lose their meaning. Consequently, we disagree that the trial court exceeded the scope of our mandate from *Tili* I by imposing an exceptional sentence.

Finally, Tili argues that collateral estoppel should apply because the trial judge stated at the first sentencing that "[a]s I read the case law and the statutory law in this [s]tate, I do not believe an exceptional sentence would be sustained by the appellate court of this state." Verbatim Report of Proceedings at 515. The trial court went on to rule that "the court feels that the high end of the standard range is appropriate . . . [which] gives the court the ability to sentence [Tili] to 417 [months]." Verbatim Report of Proceedings at 516. "The other sentences will be set at their high range, that they will be served concurrently as required by law." *Id.* However, these statements are meaningless outside the proper context. The following language, read in conjunction with that on which Tili relies, indicates the trial court's awareness, at the first sentencing, of the

uncertainty in the law concerning merger and same criminal conduct in scoring these offenses:

> The court is given the ability to impose more time than the parameters generally call for by the use of what is called an exceptional sentence. As I read the case law and the statutory law in this [s]tate, I do not believe an exceptional sentence would be sustained by the appellate court of this state.

Verbatim Report of Proceedings at 515. Later in the sentencing, after imposing 417 months for the rape sentences, the court said:

> I think the record should reflect that if the court had considered [Tili's] argument about the merger, that I do believe that the various acts constituting this offense could be used as a basis—along with the other reasons mentioned by the prosecuting attorney . . . for an exceptional sentence upwards. And in that event, the court feels that the sentence [it] is going to come up with would be a reasonable sentence.

Verbatim Report of Proceedings at 516. This language shows that the court would have imposed an exceptional sentence, but for its finding of a basis to impose consecutive sentences on the rape counts. Thus, the trial court's judgment at the first sentencing was not that an exceptional sentence was categorically unwarranted, as Tili argues. Rather, the court believed that an exceptional sentence would be unwarranted were the rape convictions to be served consecutively, but would be warranted if Tili's conduct ultimately were to be considered "same criminal conduct."

To recapitulate, we find that the issue of whether to impose an exceptional sentence was not identical as between the first and second sentencing hearings because of the critical change in context from separate and distinct conduct to same criminal conduct. We also find the facts and procedural posture of *Collicott* II to be distinguishable from the case at bar. Finally, this court contemplated the imposition of an exceptional sentence upon remand in *Tili* I as did the trial judge as evidenced by the discussion at the

first sentencing regarding the judge's intention to impose an exceptional sentence if the rapes were deemed to arise out of the same criminal conduct. For these reasons, the trial court was not collaterally estopped from imposing an exceptional sentence at the second sentencing hearing.

Imposition of an Exceptional Sentence

A. The Sentencing Reform Act of 1981

The purpose of the Sentencing Reform Act of 1981 (SRA) is to provide structure for the sentencing of felony offenders, while maintaining judicial discretion in sentencing. RCW 9.94A.010. The legislature was careful to preserve this discretion when it provided that "[t]he court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." Former RCW 9.94A.120(2) (1997). The purposes of the SRA are: "(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history; (2) Promote respect for the law by providing punishment which is just; (3) Be commensurate with the punishment imposed on others committing similar offenses; [and] (4) Protect the public." RCW 9.94A.010.

Having decided that there is no obstacle to the imposition of an exceptional sentence in Tili's case, we now review the appropriateness of the imposition itself.

 For illustrative purposes, the SRA sets out a nonexclusive list of both mitigating and aggravating circumstances, any one of which may be used to justify the imposition of an exceptional sentence. Former RCW 9.94A.390(1), (2) (1997). Aggravating circumstances must be shown by a preponderance of the evidence. Former RCW 9.94A.370(2) (1996). The aggravating circumstances of relevance to Tili's case are deliberate cruelty, multiple incidents of offense per victim, and that the operation of the multiple offense policy results in a presumptive sentence

that is "clearly too lenient in light of the purpose of [the SRA]." Pet. for Review at 10, 15, 17. *See* former RCW 9.94A.390(2)(a), (d)(i), (i) (1997). Exceptional circumstances must truly distinguish the crime from others of the same category. *State v. Chadderton*, 119 Wn.2d 390, 396, 832 P.2d 481 (1992). *See generally* DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 § 9.6 (1985). However, those factors that are inherent in the particular class of crimes at issue may not serve to distinguish defendant's conduct from what is "typical" for that crime and may not, therefore, serve as justification for an exceptional circumstance. *See Chadderton*, 119 Wn.2d at 396.

B. Deliberate Cruelty

 When the offender's conduct during the commission of the crime manifests deliberate cruelty to the victim, the trial court may impose an exceptional sentence. *See* former RCW 9.94A.390(2)(a). Deliberate cruelty consists of gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself. *State v. Copeland*, 130 Wn.2d 244, 296, 922 P.2d 1304 (1996). To justify an exceptional sentence, the cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense— elements of the crime that were already contemplated by the legislature in establishing the standard range. *See State v. Ferguson*, 142 Wn.2d 631, 647-48, 15 P.3d 1271 (2001). *See also State v. Armstrong*, 106 Wn.2d 547, 551, 723 P.2d 1111 (1986) (holding that the burns inflicted on the 10-month-old victim by defendant's throwing boiling coffee on the child and plunging the child's foot in the coffee were injuries accounted for in the offense of second degree assault and could not justify an exceptional sentence).

Tili contends that his conduct during the rapes does not amount to deliberate cruelty and that his violent acts are elements of first degree rape, done in order to exact compliance. Tili claims that his demand that L.M. say she "liked it" when he penetrated her anus and vagina does not

rise to the level of gratuitous conduct which inflicts pain as an end in itself. In support, Tili cites *Delarosa-Flores*, in which Division Three of the Court of Appeals did not uphold a finding of deliberate cruelty where defendant slapped the 67-year-old victim's thighs leaving bruises, called her "stupid lady" during the rapes, and brandished a small pair of scissors. *State v. Delarosa-Flores*, 59 Wn. App. 514, 518-19, 799 P.2d 736 (1990). The court justified this holding by stating that this conduct was not significantly more serious or egregious than is typical of other rapes. *Id.* at 519. The *Delarosa-Flores* court went on to distinguish its facts from those in *State v. Falling*, 50 Wn. App. 47, 49, 747 P.2d 1119 (1987), where an exceptional sentence based on deliberate cruelty was upheld when the defendant repeatedly called his victim "bitch" while raping her, threatened to kill her both during and after the rape, and penetrated her twice. *Delarosa-Flores*, 59 Wn. App. at 519. The commission of the acts in *Falling* lasted 20-30 minutes. *Falling*, 50 Wn. App. at 49.

 The facts of this case are more analogous to those recognized by Division One of the Court of Appeals in *Falling*. In his petition for review, Tili attempts to distinguish his conduct from Falling's. In doing so, Tili points out the factors the *Falling* court used in upholding that defendant's exceptional sentence on the basis of deliberate cruelty: that he had "repeatedly threatened to injure or kill the victim, penetrated her orally and vaginally during a 20-30 [minute] period of time, and repeatedly called her 'bitch.'" Pet. for Review at 13. The primary distinction Tili attempts to make is the disparate lengths of time between his rapes and Falling's. His distinction is without effect. Tili's acts against L.M. are more similar to than different from Falling's. Tili threatened to kill her and, in fact, did injure her when he repeatedly struck L.M. in the head with a heavy pan until she fell to her knees. He penetrated her vaginally and anally, and further degraded L.M. when he forced her to say she "liked it." These are all similar to those factors deemed sufficient to find deliberate cruelty in *Falling*. The

disparate length in time between Tili's rape and that in *Falling* is not critical. Notably, the *Falling* court did not reference the total length of the sexual assault when it listed the factors supporting its finding of deliberate cruelty. *Falling*, 50 Wn. App. at 55.

This court too, in *Cannon*, has upheld a finding of deliberate cruelty where the defendant repeatedly hit the victim's head with his fist, penetrated her multiple times, and verbally humiliated her. *State v. Cannon*, 130 Wn.2d 313, 333, 922 P.2d 1293 (1996).

Like the defendant in *Cannon*, Tili exhibited gratuitously violent behavior. Tili forced L.M.'s head back onto the floor such that she could not breathe when she tried to move her head to the side because of extreme pain. Before fleeing and before police entered L.M.'s apartment, Tili delivered gratuitous blows to L.M.'s head with his fist and had bitten her back. As the State concludes, "the record reveals that [Tili] was more intent on brutalizing [L.M.] than on reasonably using only that quantum of force necessary for her submission." Br. of Resp't at 15. We agree that Tili's conduct was more serious than that contemplated by the legislature for first degree rape.

The Court of Appeals also relied on Tili's multiple penetrations as evidence of deliberate cruelty. *State v. Tili*, 108 Wn. App. 289, 301-02, 29 P.3d 1285 (2001). In support it cited rape cases where multiple penetrations had been used as such. However, in each, the defendant was charged with only one count of rape. *Id. See State v. Vaughn*, 83 Wn. App. 669, 924 P.2d 27 (1996) (utilizing multiple penetrations as evidence of deliberate cruelty when defendant charged with one count of first degree rape), *review denied*, 131 Wn.2d 1018 (1997); *State v. Herzog*, 69 Wn. App. 521, 849 P.2d 1235 (same), *review denied*, 122 Wn.2d 1021 (1993). There are key differences between this case and the foregoing. First, Tili was convicted of three counts of rape and sentenced concurrently. Second, the rapes in *Vaughn* and *Herzog* took place over extended periods of time which played a role in the determinations made in those cases.

Third, this court determined in *Tili* I that the rapes were so close in time as to be the same criminal conduct. Thus, on the facts of this case, we decline to reach the issue of whether the multiple penetrations may also be used as evidence of deliberate cruelty since there is sufficient evidence of deliberate cruelty without resort to the multiple penetrations. We also think the issue of Tili's multiple penetrations is better addressed under the multiple offense policy discussion below. There being ample evidence to support a finding of deliberate cruelty, we agree with the Court of Appeals that the finding is not clearly erroneous and that the exceptional sentence was thereupon justified as a matter of law.

C. Multiple Penetrations as "Multiple Incidents per Victim"

Multiple incidents of offense per victim can justify an exceptional sentence. Former RCW 9.94A.390(2)(d)(i) (1997). Although the statute discusses "multiple incidents" in the context of major economic offenses, this subfactor may be relied upon as a basis for an exceptional sentence for both noneconomic and economic offenses. *See State v. Dunaway*, 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987). *See also State v. Armstrong*, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) (using former RCW 9.94A.390(2)(d)(i) to justify an exceptional sentence for the infliction of multiple injuries in the course of a second degree assault). Multiple acts in themselves establish a greater level of culpability than that contemplated by the legislature in establishing the punishment for a crime committed by a single act. *Vaughn*, 83 Wn. App. at 677-78. The aggravating circumstance of major economic offense remains a valid reason for imposing an exceptional sentence if even one of the statutory subfactors is satisfied. *State v. Branch*, 129 Wn.2d 635, 651, 919 P.2d 1228 (1996).

The State raised this aggravating factor at the resentencing for the first time, and the trial court recognized it as an additional justification for the exceptional sentence. Tili challenges the use of the multiple penetrations in this way

because he claims his conduct was not "exceedingly more egregious" than what is " 'typical' [for] rape in the first degree." Pet. for Review at 16. The State counters that while this court concluded the rapes constituted "same criminal conduct," it did not disallow the use of the multiple penetrations as an aggravating factor.

A straightforward analysis of the parties' contentions is difficult because the record is unclear as to how the trial court ultimately used the multiple penetrations in justifying the exceptional sentence. The stated bases for the exceptional sentence under conclusions of law I are: (a) deliberate cruelty, (b) victim vulnerability, and (c) multiple incidents of offense per victim as provided in former RCW 9.94A.390(2)(d)(i) (1997). Yet, findings of fact II, sections (kk), (oo), (pp), and (qq),[4] indicate that the court used the multiple rape incidents to support the operation of the multiple offense policy as an aggravating circumstance as provided in former RCW 9.94A.390(2)(i) (1997). *See also* former RCW 9.94A.400 (1996). The findings of fact do not mention the use of multiple incidents per victim as an aggravating circumstance in and of itself.

---

[4] Those sections read as follows:

kk) That the calculation of the defendant's offender score results in a range that does not consider the multiple rapes that the defendant committed against the victim in the present case and therefore a sentence within the standard range would be an insufficient means of accomplishing the purposes of the sentencing reform act;

. . . .

oo) That a sentence within the standard range would not be proportionate to the seriousness of the defendant's offenses because the defendant would be sentenced to a term that would not consider multiple rapes committed by the defendant against the victim;

pp) That a sentence within the standard range would not promote respect for the law because such a sentence would be reflective of only one act of rape and would not take into account the multiple rapes committed by the defendant against the victim. In essence, the defendant would be getting three or more rapes for "free";

qq) That a standard range sentence would result in punishment which would not be commensurate with punishment imposed on others committing similar offenses and would be insufficient to adequately protect the public.

Clerk's Papers at 292-94.

There is necessarily some overlap between these two aggravating circumstances. However, because the trial court's findings focus on the operation of the multiple offense policy, rather than multiple incidents per victim, we will confine our analysis of the multiple incidents only to the multiple offense policy.

D. Operation of the Multiple Offense Policy

■ Former RCW 9.94A.390(2)(i) (1997) provides that an exceptional sentence may be imposed if "[t]he operation of the multiple offense policy of [former] RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of [the SRA]." "The 'multiple offense policy' comes from two general rules in [former RCW 9.94A.400(1)(a), (b)]: one, the same criminal conduct rule for determining the offender score; and two, the default use of concurrent sentences for multiple current convictions." *State v. Borg*, 145 Wn.2d 329, 337, 36 P.3d 546 (2001) (footnote omitted). This section gives discretion to the sentencing court to impose an exceptional sentence when, under the above rules, the presumptive sentence is "clearly too lenient." *Id.* at 338. In keeping with this discretionary rule, we will reverse the trial court's finding on this aggravating circumstance only if we consider the leniency determination to be an abuse of discretion. *See State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990).

With no attendant discussion, Tili cites *Borg* in a statement of additional authorities. *See Borg*, 145 Wn.2d 329. In *Borg*, the defendant was convicted of six counts of unlawful possession of a firearm. The trial court imposed an exceptional sentence even though the same criminal conduct rule required that all six crimes be treated as one for sentencing. *Borg*, 145 Wn.2d at 331. The trial court's sole reason for doing so was that Borg had committed multiple crimes. *Id.* This court held that the multiple offense policy should be used in exceptional cases involving multiple offenses—not in *any* case involving multiple offenses. *Id.* at 339. Thus, the exceptional sentence was reversed because the multiple

offenses were the trial court's only basis for relying on the multiple offense policy. *Id.*[5]

 The State persuasively discourages the blind application of *Borg* that Tili apparently advocates. The harm *Borg* causes society does not significantly differ with the number of guns he possesses. However, a rape victim "suffers significantly greater harm by the rapist's repeated and varied assaults on her personal autonomy." Suppl. Br. of Resp't at 7. Each penetration, in each orifice, increases the victim's sense of danger, humiliation, and degradation. "A rapist should not be rewarded with the same sentence for multiple rapes that he would have received for a single penetration." Suppl. Br. of Resp't at 7. Based on these distinctions, we perceive Tili's situation as precisely the type of exceptional case, warranting application of the multiple offense policy, envisioned by this court in *Borg*.

 An exceptional sentence may not be based on an unproved or uncharged crime, but the underlying facts and nature of the crime may serve as the basis for an exceptional sentence. *State v. Quiros*, 78 Wn. App. 134, 138-39, 896 P.2d 91 (1995) (in vehicular assault sentencing, court could consider excessive speed even though reckless driving not charged). In this case, the trial court's finding at resentencing that "in essence, the defendant would be getting three or more rapes for 'free' " may be debated. Clerk's Papers at 294. However, it is true that the same criminal conduct finding actually resulted in no additional incarceration for *two* of the rapes. In addition, there were acts which could have supported additional units of prosecution, such as licking L.M.'s anus. Thus, the court was within its statutory authority to conclude the sentence was clearly too lenient in light of the purposes of the SRA as a result of the multiple offense policy of former RCW

---

[5] The dissent misapprehends *State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987), which was cited in *Borg*. Dissent at 380-81. The crimes in *Fisher* could not have been characterized as same criminal conduct because although the victim was the same, the incidents apparently occurred on different dates. *Fisher*, 108 Wn.2d at 421. In *Fisher*, each injury was accounted for in a separate count which was incorporated into the calculation of the presumptive range. Here, Tili got the benefit of a same criminal conduct characterization so that the multiple injuries would not be accounted for absent an exceptional sentence.

9.94A.400 and we cannot say there was an abuse of discretion.

E. Victim Vulnerability

Because it was satisfied that the other aggravating factors were sufficiently supported by the record, the Court of Appeals did not address the vulnerability issue, which the State conceded was not supported by the record. The petition for review does not address the issue. We agree with the Court of Appeals and decline discussion on vulnerability as an aggravating factor since there is sufficient evidence of alternate aggravating circumstances to warrant the exceptional sentence.

CONCLUSION

The trial court reported incorrect offender scores in the judgment and sentence. However, the correct presumptive ranges for all counts were reported in the findings of fact, which was incorporated by reference into the judgment and sentence. Accordingly, the trial court necessarily relied on the correct offender scores in order to arrive at the correct presumptive ranges. Because the issues were not identical as between the first and second sentencing hearings, the trial court was not collaterally estopped from imposing an exceptional sentence at the resentencing. The trial court's findings of Tili's gratuitous violence against L.M. are not clearly erroneous, and we conclude that the exceptional sentence is justified. Likewise, we do not believe the trial court abused its discretion in concluding that the operation of the multiple offense policy resulted in a presumptive sentence that was too lenient. The Court of Appeals is affirmed.

ALEXANDER, C.J., BRIDGE and OWENS, JJ., and SMITH, J. Pro Tem., concur.

MADSEN, J. (concurring) — I agree with the dissent that the multiple offense policy does not support an exceptional

sentence under the facts of this case. As the dissent points out, this case is controlled by *State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987). Nevertheless, I concur in the majority's result because another factor, deliberate cruelty, justifies an exceptional sentence and since the trial judge has twice imposed the same sentence, it is unlikely that a remand would result in a different sentence.

SANDERS, J. (dissenting) — The majority upholds essentially the same sentence previously reversed on review by this court. *See State v. Tili*, 139 Wn.2d 107, 985 P.2d 365 (1999). On remand the trial court reimposed the original sentence term as an exceptional sentence—even though the trial court had previously considered and rejected the State's same request for an exceptional sentence. Clerk's Papers (CP) at 230. This was error. The trial court is barred by collateral estoppel and the law of the case doctrine from imposing an exceptional sentence on remand after expressly rejecting it at the original sentencing hearing.

As the majority acknowledges, collateral estoppel in a criminal setting stems from the fifth amendment to the United States Constitution protection against double jeopardy and stands for the principle " 'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " Majority at 360 (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)). Collateral estoppel applies when "the issues raised and resolved in the former prosecution are identical to those sought to be barred in the subsequent action." *State v. Peele*, 75 Wn.2d 28, 31, 448 P.2d 923 (1968).[6]

The issue raised by the State and resolved at the original sentence hearing was whether to impose an exceptional

---

[6] The majority improperly applies the civil standard. Majority at 361 (citing *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)).

sentence on grounds of deliberate cruelty and vulnerability of the victim.

> So the standard range for the defendant, as he stands before the court, is 315 to 415 months. The State as well has briefed the issue of exceptional sentence and the State is requesting that the court find substantial and compelling reasons to justify an exceptional sentence, based on the facts of this case. The two areas that the State has identified [are deliberate cruelty and vulnerability of the victim].

CP at 223, 224. The State recommended a 587-month sentence. *Id.* at 225. Tili argued every first degree rape is a terrible crime and urged the court not to impose an exceptional sentence. *Id.* at 227. The trial court denied the State's request for an exceptional sentence.

> There can be no argument this was a terrible crime. Truly going to affect the victim and the victim's family forever. It's the court's job to decide what is a reasonable sentence within the parameters of the law. The legislature sets those parameters. The court is given the ability to impose more time than the parameters generally call for by the use of what is called an exceptional sentence. As I read the case law and the statutory law in this State, I do not believe an exceptional sentence would be sustained by the appellate court of this state.

*Id.* at 230. The trial court sentenced Tili to 417 months. *Id.* at 231.

On review we held the trial court abused its discretion by imposing consecutive sentences for Tili's three rape convictions. *Tili*, 139 Wn.2d at 124. We remanded for resentencing. *Id.* at 128. The State then renewed its request for an exceptional sentence on remand. 2 Verbatim Report of Proceedings (RP) (Apr. 2000) at 8. The trial court complied. *Id.* at 18; CP at 294 (Findings of Fact and Conclusions of Law for exceptional sentence).

However, our majority contends collateral estoppel does not apply because the issues before the trial court at the original sentencing and on remand are not the same. Majority at 365. The majority so concludes because it

interprets the trial court's prior refusal to impose an exceptional sentence as contingent on appellate affirmation of its finding that Tili's three rape convictions constituted separate criminal conduct. Majority at 357, 365.

By logical extension, the majority allows trial courts to hedge their bets against adverse appellate decisions. This contradicts the express purpose of the Sentencing Reform Act of 1981 (SRA) to provide "a system for the sentencing of felony offenders," which limits "discretionary decisions affecting sentences" and ensures the imposition of sentences "commensurate with the punishment imposed on others committing similar offenses." RCW 9.94A.010(3); *see also State v. McClarney*, 107 Wn. App. 256, 263, 26 P.3d 1013 (2001) (The purpose of the SRA is "meting out the appropriate punishment for a particular crime, rather than tailoring the sentence to a particular individual."), *review denied*, 146 Wn.2d 1002 (2002).

Consistent with this purpose, the SRA does not provide for contingent sentences. Such order necessarily exceeds the authority of the trial court.[7]

---

[7] Moreover the record does not support the majority's interpretation. Without any citation to the record the majority describes the first sentencing hearing as follows:

> At sentencing, the trial court stated that it did not believe that an exceptional sentence would be sustained on appeal if the rapes were considered separate and distinct conduct, as the trial court had considered them. However, the court went on to indicate that, should the multiple rapes be considered same criminal conduct on appeal, the same sentence would be imposed, as an exceptional sentence upward, justified by deliberate cruelty and vulnerability of the victim.

Majority at 357.

After imposing Tili's standard range sentence at the original sentence hearing in 1998, the trial court made the following statement:

> I don't know that it's necessary, but I think the record should reflect that if the court had considered *defendant's argument about the merger*, that I do believe that the various acts constituting this offense could be used as a basis—along with the other reasons mentioned by the prosecuting attorney—could be used as a basis for an exceptional sentence upwards. And in that event, the court feels that the sentence that the court is going to come up with would be a reasonable sentence.

1 RP (Jan. 23, 1998 to Mar. 17, 1998) at 516 (emphasis added). This ambiguous statement, which appears to connect the court's denial of an exceptional sentence and Tili's merger argument, became the cornerstone of the State's argument to the

At Tili's original sentencing, the trial court declined to impose an exceptional sentence on grounds of deliberate cruelty and vulnerability of the victim. But on remand it imposed an exceptional sentence on exactly the same facts, citing deliberate cruelty, victim vulnerability, and multiple offenses. Thus, there is an identity of issues as to the imposition of an exceptional sentence on grounds of deliberate cruelty and victim vulnerability, and the trial court is estopped from imposing an exceptional sentence on those grounds.[8]

The remaining question is whether the trial court may impose an exceptional sentence for multiple offenses. *State*

---

trial court on remand for imposing an exceptional sentence. 2 RP (Apr. 14 and 21, 2000) at 7-8.

At the second sentencing hearing in 2000, the State read into the record the above quoted passage and argued that in making this statement the trial court had purposely left the door open to impose an exceptional sentence on remand should the State Supreme Court reverse its decision to treat Tili's three rape convictions as *separate criminal conduct*. 2 RP (Apr. 14 and 21, 2000) at 7-8. The trial court adopted the State's self-serving characterization of its prior decision and imposed an exceptional sentence on remand. *Id.* at 18.

But the record reveals "the defendant's merger argument" had nothing to do with this court's decision to treat the rape crimes as separate criminal conduct. 1 RP at 491-92; CP at 29- 30. Prior to the imposition of Tili's sentence at the original sentence hearing the defendant asked the court to rule on four separate motions raised in his sentencing memorandum. 1 RP at 489-92. For the purposes of this decision we need concern ourselves with only the merger argument and the same conduct argument. Tili's merger argument moves to dismiss the burglary and assault convictions on the ground that the State necessarily had to prove the lesser included assault and burglary charges to prove the first degree rape charge as charged. 1 RP at 491-92; CP at 29-30. His same conduct motion asks the court to treat the three rape convictions as the same criminal conduct for the purposes of calculating his sentence. 1 RP at 491, 500-02; CP at 30-33. After hearing argument and rebuttal, 1 RP at 492-502, the trial court orally denied all four motions, treating each motion separately. *Id.* at 502-03.

Nowhere in the record does the trial court state, "it did not believe that an exceptional sentence would be sustained on appeal if the rapes were considered separate and distinct conduct, as the trial court had considered them." Majority at 357. Nowhere did it "indicate that, should the multiple rapes be considered same criminal conduct on appeal, the same sentence would be imposed, as an exceptional sentence upward, justified by deliberate cruelty and vulnerability of the victim." *Id.*

"Not the least misfortune in a prominent falsehood is the fact that tradition is apt to repeat it for truth." Hosea Ballou, American theologian (1771-1852), *cited in* George Seldes, The Great Quotations 81 (Carol Publ'g Group, 1993).

[8] Moreover, the State concedes the record does not support the imposition of an exceptional sentence on grounds of victim vulnerability. Majority at 376.

*v. Fisher* holds the existence of multiple incidents cannot serve as grounds for an exceptional sentence where these incidents form the basis for multiple counts. 108 Wn.2d 419, 425-26, 739 P.2d 683 (1987).

> Pursuant to the SRA's provision on sentencing for multiple current convictions, the trial court took into account Fisher's simultaneous convictions of two counts of indecent liberties in determining Fisher's criminal history, in order to compute his offender score and the presumptive sentencing range. By considering the multiplicity of Fisher's convictions, the trial court already accounted for the multiple incidents underlying those convictions. Therefore, it was not justified in citing Fisher's commission of multiple incidents with the same victim as a reason for imposing an exceptional sentence. This constituted the consideration of a factor which was necessarily accounted for in computing the presumptive range, and thus it was improper. Therefore, the multiplicity of incidents in this case did not justify an exceptional sentence.

*Id.* (footnote and citation omitted). Like the current case, *Fisher* involved concurrent sentences for multiple counts of sexual offenses against the same victim. *Id.* at 422. *Fisher* recognizes that basing an exceptional sentence on the fact that multiple crimes must be characterized as the same criminal conduct undermines the legislative authority to control sentencing procedures under the SRA.

The majority fails to recognize this principle. It attempts to limit the holding of *Fisher* to cases involving multiple charges for separate criminal conduct. Majority at 375 n.5. But a close reading of *Fisher* defies the majority's analysis. *Fisher* holds that the multiple incidents factor does not support an exceptional sentence where the multiple incidents form the basis for multiple charges against a defendant, but could be used to support an exceptional sentence where the defendant admitted to inflicting multiple injuries but was charged only with a single count of a criminal activity.

> This court has sanctioned the application of this factor to a noneconomic offense, noting the nonexclusive nature of the

SRA's list of aggravating circumstances. *State v. Armstrong*, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) (infliction of multiple injuries in the course of a second degree assault is a factor which justifies an exceptional sentence). However, in *Armstrong*, the multiple incidents took place in the course of a single offense. In contrast, the two incidents of sexual contact here constituted the two counts of indecent liberties of which Fisher was convicted separately.

*Fisher*, 108 Wn.2d at 425. *Fisher* makes no exception for multiple convictions based on the same criminal conduct. Nor would such an exception make sense because it contravenes the legislative determination that—without more— convictions arising out of the same criminal conduct shall not give rise to an increased offender level.

Furthermore, the doctrine of the law of the case also bars the trial court from entering an exceptional sentence. Under this principle, " 'questions determined on appeal, or *which might have been determined had they been presented*, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.' " *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (emphasis added) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)); *State v. Strauss*, 119 Wn.2d 401, 422, 832 P.2d 78 (1992) (Andersen, J., concurring) ("Had this issue been before us, I would have found that deliberate cruelty on the part of Mr. Strauss was demonstrated and that it justified the imposition of the exceptional sentence in this case. The State did not, however, cross-appeal on this issue and, as the majority opinion correctly notes, the law of the case doctrine prevents our considering it at this point.").

When Tili first sought review of his sentence by this court in 1998, the State chose not to cross appeal the trial court's judgment which expressly rejected an exceptional sentence. *Tili*, 139 Wn.2d 107. There has been no substantial change in the evidence on remand. *See* 2 RP at 3-19. Thus, the law of the case doctrine bars consideration of this issue.

I therefore dissent.

JOHNSON and CHAMBERS, JJ., concur with SANDERS, J.