# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75242-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT WILLIAM JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

VERELLEN, C.J. — Where a defendant fails to show prejudice from trial counsel's allegedly deficient performance, the defendant's claim of ineffective assistance of counsel fails. Here, Scott Johnson did not make such a showing of prejudice. Further, although the trial court erred in sentencing Johnson with an offender score of 10, remand is not necessary because the record clearly indicates that the court would have imposed the same sentence had it sentenced Johnson with a correct offender score of nine. Accordingly, we affirm Johnson's conviction. We do not award costs on appeal.

## FACTS

In March 2015, Longview police officers executed a search warrant at a residence in Longview, Washington. The targets of the search were the residence itself and Scott Johnson. The officers were looking for illegal narcotics, specifically heroin, in the residence.

No one answered the officers' knocks at the front door of the residence, so the officers forced the door open and went inside. The officers secured two rooms inside the house and detained the occupants of the rooms.

The door to a third room was locked. The officers announced themselves and forced the door open. Two females and Johnson were in the third room. When the officers entered the room, they saw Johnson leaning down near a nightstand and reaching towards the floor. Based on his training and experience, one of the officers, Detective Seth Libbey, thought that Johnson was trying to hide something by stuffing it down on the far side of the nightstand. The officers detained all three occupants of the third room.

After Detective Libbey read Johnson his Miranda rights,[1] Johnson admitted that the third room was his bedroom, but he denied possessing any narcotics. Detective Libbey searched Johnson's bedroom and found a plastic bag on a nightstand containing a substance later identified as methamphetamine. Detective Libbey found a purse on the floor near the nightstand in the area Johnson was reaching towards when the officers entered the bedroom.

The purse Detective Libbey found belonged to Jacquelyn Croseman. When the officers first entered the residence, they encountered Croseman in one of the first rooms they walked through and handcuffed her. After the occupants of the house were detained, Detective Libbey asked Croseman for consent to search her purse. Croseman consented to the search and told Detective Libbey that he would not find

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

anything in the purse. In the purse, Detective Libbey found aluminum foil containing a substance later identified as heroin.

The State charged Johnson with one count of possession of heroin and one count of possession of methamphetamine. At trial, defense counsel asked Detective Libbey if the purse found on the floor of Johnson's bedroom belonged to Croseman, and Detective Libbey answered that it did. Defense counsel also asked Detective Libbey if he knew whether anyone questioned Croseman about her purse. Detective Libbey testified that he had spoken to Croseman about her purse and that Croseman told him that the heroin found in her purse belonged to Johnson. On redirect examination by the prosecutor, Detective Libbey testified that Croseman told him that, before the officers arrived at the residence, she had been in Johnson's room and saw him with heroin. On recross-examination, Detective Libbey reviewed his police report and testified that there was nothing in his report about Croseman consenting to a search of her purse or about any other statements Croseman made to him.

The jury found Johnson guilty on both counts. Based on an offender score of 10, the trial court sentenced Johnson to 18 months on each count, to be served concurrently.

Johnson timely appealed. His trial court filed a motion for an order of indigency and the appointment of an attorney on appeal. The court granted the motion.

## ANALYSIS

### Ineffective Assistance of Counsel

Johnson claims he was denied effective assistance of counsel because his counsel elicited testimony from Detective Libbey about Croseman's statements to him,

which in turn allowed the State to elicit further testimony from Croseman about her statements. Johnson also argues his counsel was ineffective for failing to interview Detective Libbey prior to cross-examination. He argues that his convictions must be reversed because he was prejudiced by his counsel's deficient performance. We disagree.

A defendant's right to counsel includes the right to effective assistance of counsel.[2] A claim of ineffective assistance of counsel has two elements. Failure to demonstrate either element is fatal to an ineffectiveness claim.[3]

First, the defendant must show that defense counsel's performance was deficient.[4] To show deficient performance, the defendant must show that counsel's performance fell below an objective standard of reasonableness.[5] In reviewing claims of ineffective assistance, we are "highly deferential to counsel's performance."[6] We engage in a strong presumption that counsel's representation was effective.[7] When defense counsel's performance can be said to be a legitimate trial strategy or tactics, performance is not deficient.[8]

Second, a defendant claiming ineffective assistance of counsel must show prejudice. This requires a showing of a reasonable probability that, but for counsel's

---

[2] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[3] Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

[4] Strickland, 466 U.S. at 687.

[5] Id. at 688.

[6] In re Pers. Restraint of Gomez, 180 Wn.2d 337, 348, 325 P.3d 142 (2014).

[7] State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

[8] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

error, the result of the proceeding would have been different.[9] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[10]

We find no evidence in the record as to whether Johnson's counsel did or did not interview Detective Libbey prior to cross-examination. And, "there is no absolute requirement that defense counsel interview witnesses before trial."[11] The record does not support Johnson's claim that his counsel's performance fell below an objective standard of reasonableness.

Further, even if Johnson can satisfy the first element of a claim of ineffective assistance of counsel, he cannot show he was prejudiced by his counsel's actions in eliciting testimony about Croseman's statements to Detective Libbey. Two officers who executed the search warrant testified that when they entered the third room, they saw Johnson reaching down towards the floor where the purse was found, acting as if he was trying to hide something by stuffing it down on the far side of the nightstand. The jury was instructed on constructive possession. Even without evidence of Croseman's statements to Detective Libbey, the jury could have found that Johnson was in constructive possession of the heroin. We find no reasonable probability that the result of the proceeding would have been different had defense counsel not questioned Detective Libbey about Croseman's statements to him.

---

[9] Strickland, 466 U.S. at 694.

[10] Id.

[11] In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 488, 965 P.2d 593 (1998) (holding that a claim of ineffective assistance of counsel was not shown by defense counsel's failure to interview the four investigating police officers where counsel relied on the police reports instead).

*Offender Score*

Johnson argues that the trial court erred in sentencing him with an offender score of 10 because his current offenses comprised the same criminal conduct. The State concedes the error, but argues that the error is harmless. We agree with the State.

We review de novo a sentencing court's calculation of an offender score.[12] As the State concedes, the trial court erred in calculating Johnson's offender score because it scored Johnson's current offenses against each other. "[C]oncurrent counts involving simultaneous simple possession of more than one controlled substance encompass the same criminal conduct for sentencing purposes."[13] Johnson should have been sentenced with an offender score of 9.

A remand for the correction of Johnson's offender score is not, however, necessary because "the record clearly indicates the sentencing court would have imposed the same sentence anyway."[14] The two offenses of which Johnson was convicted have a seriousness level of I. The standard range sentence for a drug offense with a seriousness level of I for a defendant with an offender score of "6 to 9 or more" is "12+ to 24 months."[15] Accordingly, the standard range is the same whether Johnson was sentenced with an offender score of 9 or 10. In sentencing Johnson, the court agreed with the State's recommendation of a sentence in the middle of the standard range. The record clearly indicates that the court would have imposed the same sentence had it sentenced Johnson with an offender score of 9 rather than 10.

---

[12] State v. Tili, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003).

[13] State v. Vike, 125 Wn.2d 407, 412-13, 885 P.2d 824 (1994).

[14] State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

[15] RCW 9.94A.517(1).

*Costs on Appeal*

Johnson argues that if the State is the substantially prevailing party on appeal, we should not impose costs against him because he is indigent. The State does not request an award of costs in its brief.

Appellate courts may require an adult offender convicted of an offense to pay appellate costs.[16] The commissioner or clerk will award costs to the State if the State is the substantially prevailing party on appeal, "unless the appellate court directs otherwise in its decision terminating review."[17]

A determination of a criminal defendant's indigency is entrusted to the trial judge, whose finding of indigency we respect unless we are shown good cause not to do so.[18] Under the Rules of Appellate Procedure, where a party has been granted an order of indigency, the party and the party's counsel must bring to the attention of the trial court any significant improvement during review in the party's financial condition.[19] We "will give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent."[20]

In support of the motion for an order of indigency and appointment of an attorney on appeal, Johnson's trial counsel stated that, to the best of his knowledge, Johnson's financial situation was the same or worse than it was when the trial court originally

---

[16] RCW 10.73.160(1).

[17] RAP 14.2.

[18] State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016).

[19] RAP 15.2(f).

[20] Id.

found Johnson indigent. The court granted the motion, finding that Johnson is indigent for purposes of appeal and is entitled to appointed counsel on appeal, a waiver of all fees, and all other costs reasonably necessary to make the appeal. We presume that Johnson remains indigent.[21] Under these circumstances, we conclude that an award to the State of appellate costs is not appropriate.

CONCLUSION

We affirm. We do not award costs on appeal.

WE CONCUR:

_____
COX, J.

---

[21] Sinclair, 192 Wn. App. at 393; RAP 15.2(f).